NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 31, 2023

S23Y0579. IN THE MATTER OF BRIAN WALTON WHITESIDE.

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of special master Jo Carol Nesset-Sale, who recommends that the Court accept the amended petition for voluntary discipline filed by respondent Brian Walton Whiteside (State Bar No. 756040) after the filing of a formal complaint, see Bar Rule 4-227 (c), and impose a three-month suspension as discipline for his violation of various Georgia Rules of Professional Conduct ("GRPC"), see Bar Rule 4-102 (d), in two separate matters undertaken for the same client. Neither the State Bar nor Whiteside has filed exceptions to the special master's report, and we agree that the imposition of a three-month suspension is appropriate under the specific facts of this case.

According to the report and recommendation, Whiteside had a career in law enforcement prior to becoming a member of the Bar in

1996, at which point he engaged in private practice, primarily representing defendants charged in criminal cases. In 2018, he was elected as the Solicitor General for Gwinnett County—a position he held through January 1, 2023. Prior to his election, in January 2015, Whiteside agreed to represent a friend who was in law enforcement in a medical malpractice case that arose from the client's December 2014 visit to the emergency room at Piedmont Newnan Hospital. In February 2015, Whiteside sent a one-paragraph letter with the salutation: "Piedmont Legal Staff," demanding, on the client's behalf, five million dollars for "Grave Damage, Physical Harm, Mental Harm, Sexual Dysfunction," but including no date of medical treatment, no information about the diagnosis or treatment, no names of the treating professionals, and no explanation of how the client's treatment at the hospital caused the various general harms described. As noted, the letter was not directed to any individual, and, although it stated that it had been delivered by electronic mail "and/or" hand delivery, it bore no email address or physical address to which it was purportedly sent. Whiteside did not charge the client for this work. After sending the letter, Whiteside told the client that he had met with the hospital's

2

lawyers over multiple days regarding the client's claims, but he later admitted to the client that the statement was untrue. Over the ensuing months and years, the client made numerous requests for information about his legal matter but his requests went unanswered, and, finally, in late 2018, he checked the court's electronic docket and discovered that no case had been filed on his behalf. He contacted Whiteside, who responded by attempting to file a medical malpractice complaint in Fulton County in December 2018, but Whiteside named the defendant incorrectly and failed to include the expert affidavit required by OCGA § 9-11-9.1 (a). And, more importantly, the statute of limitations already had expired on the client's claims. Ultimately, the case was dismissed in February 2019, but Whiteside did not advise the client of the dismissal. Instead, the client only learned that his case had been dismissed when he contacted the court and made an inquiry. The special master noted Whiteside's claim that he sent the names of potential experts to the client so that he could hire one for the case, but noted that there was no correspondence from Whiteside to the client notifying him about the date that the statute of limitations would expire or clearly advising him that his malpractice case

3

depended upon his obtaining an expert who could make the averments required by OCGA § 9-11-9.1 (a). These failures, the special master concluded, were the result of Whiteside not having an adequate understanding of how to prosecute a medical malpractice claim.

In June 2015, Whiteside agreed to file and litigate a divorce action on behalf of the same client for $450. Although Whiteside filed the action in February 2016, he failed to serve the wife or to take any other action with respect to the case. The client made multiple requests for information about his divorce case, but Whiteside failed to respond to any of those inquiries. In February 2019, the client texted Whiteside once again asking about the status of the case and Whiteside responded that he had been elected to be the Solicitor General and that he was looking for an attorney to handle the divorce case, but Whiteside never found a new attorney and never withdrew from the representation. Eventually, the client was forced to hire substitute counsel to represent him in the divorce case.

Noting that Whiteside admitted all of the above facts and acknowledged that he should have declined to represent the client, particularly in the medical malpractice case, since he did not possess

the requisite skills or experience to handle the case, the special master accepted Whiteside's admission that, during the course of his representation of the client in both the medical malpractice case and in the divorce case, he violated Rules 1.1 ("lawyer shall provide competent representation to a client" and "shall not handle a matter which the lawyer knows or should know to be beyond the lawyer's level of competence without associating another lawyer who the original lawyer reasonably believes to be competent to handle the matter in question"), 1.3 ("lawyer shall act with reasonable diligence and promptness in representing a client"), 1.4 (lawyer shall "reasonably consult with the client"; "keep the client reasonably informed about the status of [his] matter"; and "promptly comply with reasonable requests for information"), 1.16 (d) (upon termination of representation, lawyer shall take steps "to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, and allowing time for employment of other counsel"), 3.2 ("lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client"), and 8.4 (a) (4) (lawyer shall not "engage in professional conduct involving dishonesty, fraud, deceit or

5

misrepresentation") of the GRPC. The special master noted that the maximum penalty for a violation of Rules 1.1, 1.3, and 8.4 (a) (4) is disbarment, while the maximum penalty for a violation of Rules 1.4, 1.16 (d), and 3.2 is a public reprimand.

In evaluating the appropriate discipline, the special master first acknowledged that this Court looks to the ABA Standards for Imposing Lawyer Discipline ("ABA Standards") for guidance in determining the appropriate sanction to impose on a lawyer for his or her violations of the GRPC, see *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996), and noted that under ABA Standard § 3.0, the factors to consider in determining a sanction include the duty violated, the lawyer's mental state, the actual or potential injury caused by the lawyer's misconduct, and the existence of aggravating and/or mitigating factors. The special master concluded that most of Whiteside's violations implicate the duties that lawyers owe to their clients: diligence, competence, and candor. See ABA Standards, §§ 4.4, 4.5, and 4.6. She noted that, with respect to Whiteside's violations of Rule 1.1, a suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he is not competent

6

and causes injury to the client. ABA Standard, § 4.52. The special master considered Whiteside's admissions that he had no experience in medical malpractice cases and that he should have at least consulted an attorney with the requisite experience before accepting the client's medical malpractice case. She also considered the fact that Whiteside's numerous mistakes in prosecuting the case ultimately led to the dismissal of the client's lawsuit and to the loss of his right to pursue legal relief for any damages he suffered.

With regard to Whiteside's violations of Rules 1.3 and 3.2, the special master recited ABA Standard § 4.42, which provides that suspension is generally appropriate when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or a lawyer engages in a pattern of neglect that causes injury or potential injury. She recited that, here, Whiteside failed to file the medical malpractice action within the statute of limitations and failed to serve the defendant in the divorce case.[1] The special master pointed

_____

[1] The special master recited Whiteside's assertions that he met with the client's wife in December 2016, but she would not acknowledge the complaint; that his attempts to have her served failed; that the client reported that he

7

out that, regardless of whether Whiteside knowingly abandoned the divorce case or negligently failed to give it due attention, he knowingly did not perform the services he had agreed to undertake, and held that his failures in these cases constituted both a knowing failure to perform necessary services for a client and a pattern of neglect of the client's legal matters.

Relating to the violations of Rule 1.4, the special master recited ABA Standard § 4.63, which provides that a reprimand is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information and causes injury or potential injury to the client. She then recounted that Whiteside failed to respond to the client's inquires as to either of his cases; failed to explain the statute of limitations applicable in the medical malpractice action; and failed to inform the client that his malpractice action had been dismissed. The special master determined that, giving Whiteside the benefit of the doubt, these failures could be seen as negligent rather

received an occasional text or call from his estranged wife, who was periodically homeless; and that, although the wife stated that she would file something on her own with the court, she never did so.

8

than knowing or intentional, but that the violations were still serious since confidence in the legal system is hurt when a client has to find out on his own that his case had been dismissed and because the client was injured as the result of Whiteside's actions. With regard to the violation of Rule 1.16 (d), the special master found that the duty violated was one owed to the legal profession and that suspension was the presumptive sanction when a lawyer knowingly engages in conduct that is a violation of that duty and thereby causes injury or potential injury to a client, the public, or the legal profession. See ABA Standard § 7.2. She recited that, here, Whiteside failed to give his client notice of his withdrawal from the divorce case, or to formally withdraw from that representation. With regard to Whiteside's violation of Rule 8.4 (a) (4) by falsely telling his client that he had met with the hospital's lawyers, the special master found that Whiteside violated his duty to his client to refrain from engaging in deceit or misrepresentation and that a suspension is the presumptive sanction when a lawyer knowingly deceives a client, and causes injury or potential injury to the client. See ABA Standard § 4.62.

The special master then considered whether the presumptive discipline should be enhanced (or reduced) by virtue of the existence of aggravating or mitigating circumstances. In aggravation, the special master found that, by his actions in these cases, Whiteside engaged in multiple offenses and in a pattern of misconduct, and that he has substantial experience in the practice of law. See ABA Standard § 9.22 (c), (d), (i). In mitigation, the special master noted that Whiteside had no prior disciplinary history; that, although he took some steps in an attempt to cover up his mistakes, he lacked a dishonest or selfish motive (having agreed to represent the client as a favor to a fellow law enforcement officer, charging him nothing for the medical malpractice case and a flat fee of $450 for the divorce case); that he was experiencing personal and emotional problems as a result of his responsibility for caring for his dying mother out of state; that Whiteside fully cooperated in the disciplinary process and admitted his violations; that Whiteside had demonstrated that he possesses good character and reputation as demonstrated by his history of serving the public through various law enforcement positions and by the various letters from people in the community attesting to his good character

10

and reputation;[2] and that Whiteside has demonstrated remorse for his misconduct. ABA Standard § 9.32 (a), (b), (c), (e), (g) and (l).

The special master then noted that for similar violations, this Court has imposed sanctions that run the gamut from public reprimand to suspension to disbarment,[3] suggesting that the appropriate sanction for such behavior is highly fact-dependent.

[2] Specifically, the special master referenced letters Whiteside attached to his amended petition from seven members of the public, two of whom were attorneys, and all of whom attested to his honesty, good character, and commitment to his community.

[3] See *In the Matter of Bell*, 313 Ga. 615 (872 SE2d 290) (2022) (disbarment, e.g., for lawyer's failure to act diligently and adequately communicate with client; lawyer made numerous misrepresentations to client, exhibited a dishonest or selfish motive, and had two instances of prior discipline and failed to respond to the Bar's motion for summary judgment); *In Matter of Golub*, 313 Ga. 686 (872 SE2d 699) (2022) (one-year suspension for lawyer who failed to complete legal work and failed to adequately communicate with client; one instance of prior discipline); *In the Matter of Van Johnson*, 313 Ga. 151 (868 SE2d 794) (2022) (accepting petition for voluntary discipline and imposing six-month suspension for lawyer with no prior disciplinary history who misappropriated, but repaid, client funds and who failed to perform diligently or to adequately communicate with two clients); *In the Matter of Kirby*, 312 Ga. 341 (862 SE2d 550) (2021) (accepting fourth petition for voluntary discipline and imposing six-month suspension for lawyer, with one prior instance of discipline, who neglected and mishandled multiple client matters over several years); *In the Matter of Gantt*, 302 Ga. 3 (804 SE2d 336) (2017) (accepting petition for voluntary discipline and imposing public reprimand for lawyer with no prior disciplinary history, who failed to notify a client of the dismissal of a lawsuit and failed to timely file a renewal action).

11

Noting that Whiteside had requested a public reprimand, but had agreed to accept up to a three-month suspension from the practice of law as discipline for his misconduct, the special master indicated that a reprimand might have been appropriate if Whiteside's misconduct was solely the result of negligence, but that, here, Whiteside accepted the malpractice case knowing that he had no relevant experience; his false statement was knowing, if not intentional; his failure to inform his client about the statute of limitations was knowing; his filing of the malpractice complaint without the required affidavit and after the statute of limitations had expired suggested that Whiteside acted knowingly and intentionally to cover up his mistakes; and his failure to advise his client that his malpractice action had been dismissed was done knowingly and as part of a pattern of behavior intended to hide his misconduct. The special master concluded that, while the knowing and intentional nature of Whiteside's actions rendered a reprimand an inadequate sanction, the mitigating factors suggested that a short suspension would be appropriate discipline. For those reasons, the special master recommended that this Court grant Whiteside's

12

amended petition for voluntary discipline and impose a three-month suspension as discipline for his misconduct.

Having reviewed the record in this case, this Court agrees that a three-month suspension is appropriate in this matter, given Whiteside's lack of any prior discipline, his full cooperation in these disciplinary proceedings, and the other mitigating factors identified by the special master. See *In the Matter of Powell*, 289 Ga. 215 (710 SE2d 145) (2011) (accepting petition for voluntary discipline and imposing three-month suspension for attorney's violations of Rules 1.3, 1.4, and 3.2; no prior disciplinary history). Because there are no conditions on Whiteside's reinstatement other than the passage of time, there is no need for him to take any action either through the State Bar or through this Court to effectuate his return to the practice of law. Instead, the suspension based on this opinion will take effect as of the date this opinion is issued and will expire by its own terms three months later. Whiteside is reminded of his duties pursuant to Bar Rule 4-219 (b).

*Petition for voluntary discipline accepted. Three-month suspension. All the Justices concur.*

13